Case No. 245794, William McLemore et al. v. Roxanna Gumucio et al. Oral argument not to exceed 15 minutes per side. Mr. Fah for the appellant. Thank you, Your Honors. And may it please the Court, Wen Fah for the online auctioneers and I'd like to reserve two minutes for rebuttal. All right. Speech is an integral rather than an incidental part of an online auctioneer's work. On the front end, an online auctioneer must create narratives, take pictures, or create videos that portray their products in an accurate and enticing way. On the back end, an online auction is defined by speech. It's a communication that consists of a series of invitations by the online auctioneers to the members of the audience for offers to purchase goods or real estate. Those factual allegations track the two reasons why the District Court erred in a failing to apply heightened First Amendment scrutiny. First... Well, you know, the state doesn't attempt to require the auctioneer to regulate his expression when he conducts his auction. It requires the license purportedly to protect members of the public from fraud and other associated problems. So I guess the argument here on the other side is that there's not a First Amendment problem. What we have is a regulation of commercial activity. And if that's so, we don't need to resort to strict scrutiny or standard of review that you're asking for. We could decide the case based on rational basis review. If we view this as a commercial regulation more so than as a First Amendment problem, then rational basis review would be appropriate, don't you think? That's not quite right, Your Honor. I'm sorry, I didn't quite hear what you said. I said that's not quite right, Your Honor, because the Supreme Court in NIFLA made it very clear that the government does not have unfettered discretion, unfettered ability to restrict speech simply by imposing a licensing requirement. But how are they restricting speech? They're not telling the auctioneer what to say when he conducts his auction. Well, I mean, I think that that conflates the difference between viewpoint discrimination and content discrimination. So I think you would have to look at a professional licensing law as you would as any other law to see whether or not the First Amendment applies. So you would have to look at the text of the statute, or as the Fourth Circuit did in Billups, or the D.C. Circuit did in Edwards, look at the effect of the statute. How does the state law here mitigate against the ability of the auctioneer to conduct his auction if he does it in compliance with the licensure requirement? Well, I think it restricts our speech in the same way that... No, how does it do that? You keep announcing a conclusion, but to understand the basis for the conclusion... Yes, and I would... Wait a minute. You keep interrupting. We can't both talk at the same time. You understand? I understand, Your Honor. Okay, go ahead. I would analogize this to the Billups decision from the Fourth Circuit that we cite in our brief. And there, that case involved a tour guide's licensing ordinance that required all tour guides to be licensed. And there, the Fourth Circuit held that that statute had the undoubted effect of prohibiting the speech of individuals because tour guides was essentially a speaking profession. Are you asking us to kind of categorize what are speaking professions and what are not speaking professions and only not speaking professions can be licensed, the state can require a license of, or I should say, don't get strict scrutiny of their licensing scheme? Yes, Your Honor, I think that... I guess I'm looking for a limiting principle, right? If auctioneers, then why not lawyers, real estate agents, insurance brokers? I'm sure my lack of imagination, but if I thought about it, I might be able to get some more. Are courts supposed to now say, okay, this is a lot of speaking in this job, so we can't do licensing, or that licensing is subject to strict scrutiny. This is not so much speaking, so it gets rational basis. I mean, last I checked with the First Amendment, we cared less about quantity. It was just speech was protected. So I'm confused about if we were to agree with you, what test we'd even be agreeing to. Yes, Your Honor, so I think the limiting principle is that you have to look at the text of the statute and the effect of the statute, so I don't doubt that many professions are... What about the text of the statute here, besides the fact that it regulates auctioneers, makes it unconstitutional? Is there a way that you think auctioneers could be required to get a license that wouldn't violate the First Amendment? Not with this law, Your Honor, because I think with the text of the statute here, this law prohibits an oral, written, or electronic exchange, and it prohibits that exchange when there's a series of invitations. But there's really no law that could define auctioneering and require you to get a license for it that could ever at least not be subject to strict scrutiny, in your view, because auctioneering by its nature involves speech, based on your argument. Yes, Your Honor, and I think any auction law would require heightened First Amendment scrutiny if it's content based. I think we would argue that it would involve strict scrutiny. And here, the district court... Okay, so take me to your rule then, if auctioneering requires it, what other professions? Like, how do we measure such that, you know, any license of something that, you know, requires speaking or, I assume, writing First Amendment, taking pictures, right? You talk about... I mean, can we not license that unless it hits strict scrutiny? So, Your Honor, in cases like Edwards in the D.C. Circuit, Billups in the Fourth Circuit, I think those courts made it clear that, you know, if you look at tour guides, for example, that's a speaking profession. So I think the state can still license those professions. It would just have to meet the standard for First Amendment, heightened First Amendment scrutiny. I think a lot of other professions, presumably, would not have to meet that test. For example, in, you know, one of the examples that the government puts out in its opening brief is a regulation on lawyers. So I think lawyers would be... I think that would be a harder question because, you know, lawyer solicitation or lawyer advertising is covered by the First Amendment, and that's precisely what an online auctioneer does. But that's a harder question because some circuits have said that if you give speech that leads to an independent legal effect, then that's usually not covered by the First Amendment. And I think if it is covered by the First Amendment, it would have to... it would meet a more lenient standard. Let me ask you this. What is the fundamental right that's being burdened here under the... by this law, under the First Amendment? The fundamental right being burdened here is our clients' right to engage in conversations with our clients. So basically, typically solicitations for offers to purchase goods or real estate. The other right that's being burdened is our right to advertise. In an online auction, the consumers do not see the products in person. So as a core part, as an integral part of our job, we have to create narratives. We have to create pictures and videos. But you haven't explained how this law burdens the auctioneer's ability to do that. It seems like there's only an incidental impact on speech. So once the auctioneer gets his license and he gets up there and conducts the auction and starts talking, how is he being burdened in his speech? You haven't explained that. Specifically, how is the licensure requirement impeding him? He still is conducting his commercial activity, presumably the way he wants to, as long as he doesn't violate the state law. So you haven't explained how the speech is being burdened by this licensure requirement. You just made the conclusionary statement that there's a First Amendment problem. But no First Amendment problem has been explained. Instead, there's a commercial activity here that the state has a right to regulate. And you haven't identified what the problem is. Well, I think the problem here is the same problem with the tour guide's ordinance in Billups. Well, yeah, but looking at the factual circumstances of our case, how is the auctioneer being impeded? You're not claiming that the licensure requirement is so burdensome that he can't get the license. You're not claiming that, as far as I know. You just don't want the licensure requirement to exist. Right? Well, this is activity that our clients have engaged in for years without a license, before the licensing. So what? The state now thinks that it needs to regulate this activity in the public interest. So, I mean, every statute, every regulatory statute is new when it's first implemented. Right? Right, Your Honor. But I think that the burden here to us is the same as a burden of a tour guide's ordinance. There too, that was a straightforward licensing. What's the burden here in this case? The burden here is that our clients conduct, they do advertising, and they solicit offers as a core and integral part of their profession, and they cannot continue to engage in those professional activities, those classic First Amendment activities. Your Honor, explain why you claim they can't continue to run their business as a commercial activity. You haven't explained. I know your conclusion, but I don't know the basis for it. Right, and I think that the difference here is that the licensing scheme itself can lead to a First Amendment burden. It can trigger First Amendment scrutiny. And in fact, the district court in this case held that, or stated that an online auction is about as clear of an example as commercial speech as one could find had it not been felt and would have presumably applied heightened scrutiny had it not felt bound by this court's decision in Liberty Coins. But Liberty Coins simply did not present the argument that we're presenting in this case. In Liberty Coins, that was a concededly conduct-based profession, and the sole claim was a facial claim that the precious metal dealer couldn't also hold himself out as such through advertising, but as this court noted, you can also hold yourself out as a precious metal dealer simply by conducting business in a manner that's open to the public. So there was really no claim that the profession was a speaking profession, and we have made that here because this profession requires core First Amendment activities such as solicitation and advertising. Well, I wrote the Liberty Coins case, and that case is so different, it doesn't really have any applicability here. I agree, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. I'm Edril Krim for the people in the state of Tennessee. Before you get into your argument, one thing I was going to ask for your opposing counsel, I'll ask him in rebuttal, but I noticed in your brief you cited the Vidal v. Elster case, which had relied on history and tradition to interpret the First Amendment, but you didn't present any history and tradition in your brief, and so I took it upon myself to ask a clerk to look into history and tradition, and it turns out it seems like there may be some cases from the early American Republic where there were multiple statutes mandating auctioneer licensing that were apparently considered to be lawful, no constitutional problem. Would that be relevant to our analysis in this case and perhaps provide an alternative way to affirm without getting into the vagarities of modern judicial doctrine? Well, Your Honor, I'm not so sure that history isn't already present in the modern doctrine, and the reason we didn't brief this from the history side is because we were trying to engage in the case law that binds this court, but we do think that that case law developed in the context of that history, and in particular, if you look at the Lichtenstein case, we do think that that is trying to explain decades worth of jurisprudence that reconciles these areas where state action has seen not to implicate the type of censorship concerns that lead to heightened scrutiny versus areas where it does, and that is fundamentally a question of history, and really what the courts have done in this area is try to explain when the First Amendment refers to abridging the freedom of speech, what does that mean? It is not a freedom to use words however and whenever you want to. It is not necessarily even tied to the use of language itself, as Lichtenstein explains, it's tied to the expression of particular messages, and very often we have conduct carried out through language, and sometimes we have expression that's conveyed through conduct, and so it can be very difficult in certain cases to tease out what the state is actually doing when it's regulating. It's not surprising to hear that there are historical antecedents to the Tennessee Auctioneering Statute. Tennessee Auctioneering Statute dates to 1967, so it's itself a very old statute, and I just want to touch on the fact that we're not regulating auctioneering over concern about what auctioneers say when they are conducting an auction. It's over the concern, this is principally, it's a fiduciary role, you know, this is a profession where someone has property, usually it's very valuable property, real estate, they're saying they auction cars. Is the position you're taking, would it force us to be in conflict with the Fourth Circuit in that decision about the tour guides? So yeah, the Billups case, it's not clear to me. I think, you know, the virtual drone case kind of analyzes Billups in a way that we think might be consistent with Sixth Circuit precedent on, you know, with Lichtenstein and the concept that you look to, are you targeting expression or are you targeting the conduct? The way the Billups court describes what it's doing sounds to me an awful lot like the intertwined theory that the other side is using, this concept of how reliant on speech is your profession. We do think that the court rejected that in Lichtenstein. We think that's inconsistent with EMW, and we also think to Judge Blumkatz's point earlier, there's no stopping point to that mode of thinking, you know, it would apply to doctors, it would apply to lawyers. We think it would also apply to counselors, real estate agents, car dealers, surveyors, nutritionists, interior designers, psychologists. We mentioned some of those things. That was more of an imagination than I did. That was good. Yeah, I guess back to my history and tradition approach. Of course. We actually have, they were talking about auctioneers, licensing auctioneers, they were talking about tour guides. I don't know if there's any antecedent tour guide licensing at the founding, but at least that would allow us to address that, I think, without even getting into how it affects the Fourth Circuit. The Fourth Circuit, too, was there any allegation that tour guides were fiduciaries like auctioneers here? No, Your Honor, there wasn't, and I think that's a factual distinction that's important in this case, and that you don't really have that trust relationship. And fundamentally, you know, the language of the statute came up in the topside argument I just want to address. The auction is defined, actually, as a sales transaction conducted by oral or written exchange. I would say every sales transaction is in some sense conducted by oral or written exchange, but it's a sales transaction, and it's culminating in the acceptance of the highest or most favorable offer. It's the auctioneer that does the negotiation on behalf of the person selling the good, and accepts the solicitations, the bids from the potential buyers, and decides which one to sell to, and executes a contract. And that's actually why when we talk about licensing, it's unlawful for a person to act as, advertise as, or represent to be an auctioneer. That doesn't simply mean calling bids. It means, you know, the principal auctioneer definition in the statute, which is kind of our standard license, is an individual who, for valuable consideration, meaning a professional, uses the means or process of auction to offer and execute a sale. So anyway, yes, it's a long way of saying this is a fiduciary role, this is the type of profession where we have these economic concerns, that's why we're regulating it. You could distinguish it from tour guides in that way. We're fine if the court wants to say this case is distinguishable from Billups on the facts. We're also fine if this court wants to recognize that cases like EMW, Liberty Coins, and Lichtenstein already put it in conflict with Billups. We're not so sure that Billups represents the law of the Fourth Circuit. Again, I cite the Virtual Drone case, the Stein case about lawyers. While we're on the subject of lawyers, you know, lawyers came up, I just want to mention the Schwer case from the Supreme Court, as well as the Castile case, the Howell case, and the Stein case from the Third, DC, and Fourth Circuits, respectively, all addressed lawyer licensing. They all say it's a conduct regulation. They all do rational basis review or the applicable, you know, I think in some of those circuits, they've gone to intermediate scrutiny, mainly as a concession. But in any event, that's distinguishable from lawyer solicitation, which the case law in this circuit, the Supreme Court, and elsewhere recognizes is a direct regulation of lawyer speech. And that's why you get into intermediate scrutiny under the Zouderer standard, I believe. And so, you know, we think that that is totally consistent with Sixth Circuit precedent here. And frankly, it's a good analog to this case. When you regulate auctioneering as a profession, because of the concern over the auctioneer's representation of the client, and what they might do with the client's goods, and how they might, you know, conduct themselves within the laws of the state, you're in a conduct regulation situation. Once you go ahead and start telling the auctioneer what they can and can't say within a certain context, you are much closer to the line. I don't want to say you're necessarily on the line of a speech regulation, because I think there are certain instances where a licensed professional must be told what to say and not to say in order to maintain a certain level of quality. For instance, I can't stand in front of a jury on behalf of a criminal defendant and say, ladies and gentlemen of the jury, my client is guilty. Like, if the state didn't say that that was malpractice, we wouldn't be able to regulate lawyers at all. We wouldn't be able to maintain a quality standard for the legal profession. So, if there are no questions on any of those points, I would tell the court, I think you can take comfort in the 11th Circuit's jurisprudence on this. We don't agree with every case in that circuit, but we think they've addressed a number of different fact patterns, and we do think, if the court doesn't think the Liberty Coins case is terribly on point factually, we do think the Del Castillo case from the 11th Circuit is very on point factually. This is the case that deals with dietitians and nutritionists, and this is a post-NIFLA case, so it does address the state of the law after the Supreme Court said there is no professional speech doctrine that insulates professional speech from strict scrutiny. But nevertheless, the 11th... Can I ask you about Del Castillo? Was there an analysis in that case about history and tradition for nutritionists and dietitians? And do you think, if history and tradition didn't support that, that the case should have come out differently? I don't want to say that the case should have come out differently, Your Honor. Obviously, it's consistent with everything we're arguing in this case. I don't recall an analysis of history and tradition in that case, but I could be remembering incorrectly. I do think the point I made earlier still holds, though, in that the First Amendment has been with us since the founding. It's been applicable to the states since incorporation in the 20th century. We do have a 20th century free speech jurisprudence that is somewhat convoluted, and Lichtenstein is trying to address that by explaining, you know, we have these common law principles and these concepts of what the state can and cannot do consistent with a free society that has open expression and ideas, and we need to make sure that the free speech clause of the First Amendment doesn't swallow democratic government that couldn't be consistent with the original intent of the First Amendment. At the same time, we need to make sure that the First Amendment is not engaged in, you know, fundamentally it's a censorship concern, I get back to. Not every speech regulation has to be, you know, viewpoint discrimination or content discrimination, what have you, but the reason we have these different tiers of scrutiny is to try to tease out in different contexts what the likelihood is that what the state is actually doing here is fundamentally, you know, in a word, censorship. But Lichtenstein, in none of the cases otherwise that you're telling us, tells us we have to, like, a historical analog, like a la Bruin test. Sure, there is, as of yet, there is no Bruin, Romini-style analysis. But if you find the analog, seems like ipso facto, it means it should be pretty strong evidence the First Amendment doesn't. Absolutely, Your Honor. And I think if you find the analog, then the cases, and I think this case is a great example. It's a more difficult case if you're not finding any analogs, but if you are finding analogs, it seems like it's pretty clear. Yes, I think that's absolutely true. And I think that, you know, the doctrine, in some sense, is a way of explaining the fact patterns, right? Is a way of explaining how different scenarios have played out and been addressed over time. And again, I do think Lichtenstein's useful, even though the facts are somewhat, you know, separate from this case, in the sense that it does kind of tease out all these different fact patterns and, you know, a decades-long history of cases falling on this side of the conduct line or that side, you know, of the conduct line. And so it is helpful in that way. But, you know, honestly, this is somewhat of an easy case. Because there are historical analogs, because this statute has been around so long and been so uncontroversial for so long, and really because it's only a function of, frankly, we think, misconstruing more modern free speech precedents that they're even able to make a colorable argument in this case, that this is somehow a speech regulation getting you into. And they say, well, it's, you know, content-based and speaker-based and speaker discrimination, and then we get to strict scrutiny, you know, by default, almost. And, your honors, I think it's not the law of this circuit that every time the state exercises the police power, it has to clear strict scrutiny because it's regulating, you know, this sector of the economy, and that's, by default, content discrimination. We think that's an unadministrable line. It's inconsistent, frankly, with the reasons we have the First Amendment, which is to support democratic decision-making, policy discussion, and the ability to exchange ideas and derive from those truths that help us regulate our government through the political branches. We recognize that the judiciary is a check on that to protect individual rights, but the check is not strict scrutiny every time to make sure that, you know, whatever the state has done sits well with, you know, with the federal bench under the strict scrutiny standard. So, your honors, if there are no more questions on any of that, we'd just ask the court to affirm. We'd stand our briefings on everything else. Thank you. All right, thank you very much. We'll have rebuttal. Thank you, your honors. Two factual points and a legal one. On the factual points first, the statute itself deals with invitations for a series of offers, so they are not regulating the sale of a product or sale of a product at any price or even the fiduciary relationship. The sale is legal. The sale of the product at any price is legal. It's just that you're inviting a series of offers for a good or for a good or product that's prohibited by the statute. So, that's a distinction on the text. On the historical tradition point that Judge Bush mentioned, you know, we've had dozens of briefs that were filed in this court and the district court in this case and in Macklemore One, and they have never brought up that historical analog issue, and I think it's easy to understand why, because online auctions are inherently different from traditional auctions. So, even if there was a historical analog for traditional auctions, I don't think you can impute that for online auctions. And the best... Well, the difference is it's a completely different... You're buying products online. You're not in a physical definable setting. And I think the best place to look would be to the 2006 Attorney General's opinion on this very issue that we cite in our briefs, because they describe the differences themselves. And then finally, I would say that we do have a limiting principle in looking at the text and the effect of the statute. I think they're actually the ones without a limiting principle, because under their view, every licensing scheme would automatically be subject to rational basis review. And if you look at circuit court cases dealing with that device and... What is your limiting principle? Is that you have to look at the text of the statute to see if it directly infringes speech or you have to... If the text of the statute mentions like words, briefs, writing, it's heightened scrutiny. Yes, if it defines the prohibition by reference to communication, a series of offers, if the actual thing is legal, but the speech is illegal, I think that would be subject to heightened First Amendment. But if it just said sale without mentioning that there was speech involved in selling something, it'd be okay. I think that would not be facial... That would not facially implicate the First Amendment, Your Honor. Okay. All right. Thank you, Your Honor. Thank you very much. And the case is submitted.